# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No.: 18-cv-00903-WJM-MJW

**AMY DOMOKOS,**

    Plaintiff,

v.

**SHELTER MUTUAL INSURANCE COMPANY,**

    Defendant.

---

## FIRST AMENDED CIVIL COMPLAINT AND JURY DEMAND
---

The Plaintiff, Amy Domokos, by and through her undersigned attorneys, ZANER HARDEN LAW, LLP, hereby submits the following First Amended Civil Complaint and Jury Demand and asserts:

## **JURISDICTION AND VENUE**

1. At all times relevant to this action, Plaintiff Amy Domokos (hereinafter "Plaintiff") resided in Colorado.

2. Upon information and belief, at all times relevant to this action, Defendant Shelter Mutual Insurance Company (hereinafter "Defendant") was and is a Missouri corporation licensed to do business in the State of Colorado.

3. At all times relevant, Defendant purposefully availed itself of the privilege of conducting business in the State of Colorado.

4. Defendant maintains a registered agent for service in Denver, Colorado: Division of Insurance, 1560 Broadway, Denver, Colorado 80202.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is a civil action in which at least two of the parties are citizens of different states.

6. Pursuant to 28 U.S.C. § 1332, Plaintiff is claiming in excess of at least $250,000 in damages, attorneys fees recoverable under Colorado law, plus statutory penalties pursuant to C.R.S. § 10-3-1116 of two times the covered benefit of $250,000.00. The Plaintiff has economic damages of $82,645.23 and now suffers from a permanent, debilitating, and permanent stutter. The Defendant has already valued this case at $75,000.00.

7. Venue is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Colorado.

## FACTUAL ALLEGATIONS

8. On or about October 25, 2015, Plaintiff was involved in a three-vehicle collision on Interstate 25 near the 6th Avenue exit in Denver, Colorado.

9. Prior to the collision, Plaintiff was stopped in traffic in her 2014 Nissan Altima on northbound Interstate 25.

10. Laura Racine (hereinafter "Racine"), was traveling northbound on Interstate 25 behind Plaintiff going approximately 55 miles per hour in her 2003 Toyota Highlander.

11. Because Racine was driving inattentively, she failed to note that traffic was stopped and slammed into Plaintiff's vehicle.

12. The force of the impact was so great that it pushed Plaintiff's vehicle into the vehicle in front of hers, causing a second impact and triggering Plaintiff's airbags to deploy.

13. The Denver Police Department investigated the collision and issued Racine a citation for "Following Too Close."

14. Racine drove in a careless and imprudent manner and failed to take into account the safety of others, particularly Plaintiff, when Racine caused the three-vehicle collision.

15. As a result of the collision, Plaintiff suffered physical and neurological injuries, including a traumatic brain injury, and underwent medical treatment.

16. Specifically, Plaintiff suffered from neck and back sprains, a muscle spasm, and a concussion.

17. Directly following the collision, Plaintiff developed a severe and debilitating stutter, which catastrophically impaired her ability to speak.

18. The stutter was worsened by stress, anxiety, and other crash-related cognitive issues, further humiliating Plaintiff.

19. Due to her injuries, Plaintiff missed several weeks of work at Vista Peak Exploratory School, where she teaches the fourth grade.

20. Additionally, Plaintiff was unable to return to her second job as a restaurant server because the physically demanding nature of the work was impossible given Plaintiff's injuries.

21. Plaintiff was not comparatively negligent and did not cause the collision.

22. Plaintiff was wearing a seatbelt at the time of the collision.

23. As a direct and proximate result of Racine's negligence, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to, past and future medical expenses, lost wages, and other economic losses.

24. As a direct and proximate result of Racine's negligence, Plaintiff suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional stress and impairment of quality of life.

25. As a direct and proximate result of Racine's negligence, Plaintiff has suffered physical impairment.

26. In June 2016, given Plaintiff's extensive injuries, damages, and losses, Plaintiff settled with Racine's bodily injury insurer, Allstate, for Racine's bodily injury policy limits of $100,000.00.

27. Defendant consented to Plaintiff's settlement with Racine's bodily injury insurer on June 9, 2016.

28. Racine was an underinsured motorist at the time of the collision, maintaining limited insurance coverage, and less than was necessary to compensate Plaintiff for her injuries and damages caused by Racine's negligence.

29. At the time of the collision, Plaintiff was insured by Defendant for Underinsured Motorist Benefits (hereinafter "UIM Benefits") in the amount of $250,000.00 under policy number 05-1-2970880-5 (hereinafter the "Policy").

30. Defendant received premium payments from Plaintiff for years in exchange for insurance coverage under the Policy, including UIM Benefits.

31. As an insured for UIM Benefits under the Policy, Plaintiff is entitled to recover UIM Benefits directly from her insurance company, Defendant, when an underinsured and negligent driver, such as Racine, injures her.

32. Plaintiff is entitled to UIM Benefits for her injuries, damages, and losses pursuant to her contract with Defendant and C.R.S. § 10-4-609.

33. On June 27, 2017, Plaintiff sent Defendant a request for UIM Benefits in which she sought fair compensation and indicated that Plaintiff was "willing to settle her claim for her policy limits."

34. Plaintiff described to Defendant the catastrophic effects that her injuries, especially her traumatic brain injury and stutter, had upon her life.

35. Plaintiff also attached all relevant medical bills and documentation of mileage, wage loss, and future treatment totaling $82,645.23.

36. Plaintiff explained to Defendant that as a result of her brain injury, Plaintiff began suffering from a stutter and other cognitive difficulties.

37. As a result, Plaintiff stated that she struggles to complete short and simple sentences, has difficulty finding words, and stumbles through pronunciation, all of which are particularly embarrassing and challenging for Plaintiff as a fourth-grade teacher.

38. Plaintiff submitted an audio recording to Defendant with her request for UIM benefits, in which Plaintiff is reading a story to her young students. The recording, which lasts approximately four minutes, illustrates the sad and debilitating effects the stutter has on her daily life and profession.

39. Plaintiff's request for UIM Benefits detailed the numerous examples throughout the audio recording that demonstrate the severity of Plaintiff's stutter.

40. Plaintiff also described to Defendant how, as a result of the crash, she suffers from intermittent pain in her neck, back, and head, which limit her physical activity and ability to participate in activities she regularly enjoyed before the collision.

41. Defendant responded to Plaintiff's letter on July 20, 2017, indicating that Defendant needed additional time "to review the medical information presented."

42. On August 3, 2017, Defendant offered Plaintiff $20,000.00 to settle her claim for "all loss suffered, including outstanding liens, medical bills, or other damages or expenses related to the accident," without any explanation for this amount.

43. On November 13, 2017, Plaintiff sent Defendant correspondence reminding Defendant of its duties to Plaintiff under Colorado law with regard to handling claims for UIM Benefits like Plaintiff's.

44. Plaintiff's letter also reminded Defendant of the incredible challenges that Plaintiff faces daily as a teacher of young children due to her crash-related stutter.

45. Plaintiff requested that, pursuant to Colorado law, Defendant provide a written explanation for its offer of only $20,000.00.

46. Plaintiff also renewed her request for the full policy limits available under the UIM Benefits from Defendant and explained that "[l]osing part of one's identity, the ability to perform her job, and her confidence at such a young age, because an underinsured driver negligently stole these things from her by inflicting a brain injury and the onset of a stutter (a stutter she has *no* history of), would seem to easily eclipse the amount of available coverage from her own insurance company."

47. On December 5, 2017, Defendant informed Plaintiff, again without any explanation or reasoning, that Defendant would not increase its previous offer of $20,000.00.

48. Defendant ignored Plaintiff's request for an explanation and breakdown of the settlement offer, simply listing the total offer amount.

49. On December 12, 2017, Plaintiff sent a second request to Defendant for a written breakdown of the settlement offer, specifically seeking Defendant's valuation of her past, future, and non-economic losses.

50. On December 26, 2017, Defendant increased its settlement offer to $75,000.00 but continued to ignore Plaintiff's request for Defendant to explain its offer in writing.

51. In response, on January 31, 2018, Plaintiff sent her **third** request to Defendant for an explanation of the claims-related determinations related to the offer, stating that Defendant should "provide your insured with the written explanation that she has now requested on three separate occasions and is entitled to under C.R.S. 10-3-1104(1)(h)(XIV)."

52. Plaintiff reminded Defendant of the "tragic and ongoing stutter from which [Plaintiff] suffers and will continue to suffer for the remainder of her life."

53. Plaintiff also voiced her concern that valuing this "permanent, discernible and frustrating disability as anything less than Defendant's policy limits seems inappropriate and unreasonable given the fact that [Plaintiff] contracted with Defendant to ensure that she and her family were protected in the face of tragedy caused by an underinsured motorist."

6

54. As a result, Plaintiff renewed her request for Defendant's UIM benefit policy limits, imposing a time limit of ten days for this request.

55. However, Defendant failed to tender Plaintiff's full policy UIM Benefits upon the expiration of that ten-day period.

56. Rather, on February 9, 2018, Defendant responded to this request by renewing its offer of $75,000.00, stating "[w]e have based our settlement evaluation on the medical records and bills presented by [Plaintiff's counsel] and lost wages. The medical records state that they do not believe her stutter is related to this accident. Furthermore, we feel that some of these complaints were cause by the second accident on January 4, 2016."

57. In this cursory explanation, Defendant ignored the fact that Plaintiff's stutter was completely nonexistent prior to the collision.

58. Defendant specifically disregarded Plaintiff's confirmed diagnosis of a stutter by Dr. Avner at Blue Sky Neurology within ten (10) days after the collision.

59. Aside from completely discounting the reality of Plaintiff's sudden onset stuttering problem, Defendant also ignored all of the significant pain and suffering Plaintiff has gone through these past few years as a result of the distracted driver and gave no credence to her ongoing pain and suffering and physical impairment.

60. Defendant failed to investigate Plaintiff's prior medical history for any indication that Plaintiff's stutter existed prior to the collision.

61. On March 2, 2018, Plaintiff sought clarification from Defendant as to how Defendant valued Plaintiff's damages and arrived at the $75,000.00 offer.

62. In this letter, Plaintiff informed Defendant of how distressed Plaintiff was that Defendant, her own insurance company, "does not believe that her stutter was caused by the crash."

63. Plaintiff reiterated that she never had this stutter before the collision.

64. To date, Defendant has still not provided Plaintiff with the detailed breakdown of its $75,000.00 offer.

65. Defendant has unreasonably and in bad faith failed to offer Plaintiff an adequate amount to compensate her for her extensive injuries, damages, and losses.

66. Defendant has unreasonably and in bad faith evaluated Plaintiff's request for UIM Benefits.

67. After filing suit, Shelter then reversed its coverage decision, asserting to the Court and to counsel that there was no longer coverage of $250,000.00. This 11th hour reversal came after Shelter had previously represented to Plaintiff (over several years) that there was $250,000.00 in coverage both in writing and orally over the phone.

68. To accomplish this reversal, Shelter amended its answer to deny that there was $250,000.00 in coverage and then surreptitiously identified only one of the three policies with Plaintiff as a named insured (the one without UIM coverage), failing to identify the policy that does in fact provide UIM coverage to Plaintiff as a named insured.

**FIRST CLAIM FOR RELIEF**
**Underinsured Motorist Benefits**

69. Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 68 of this Complaint, as if set forth *verbatim*.

70. At the time of the collision, Plaintiff qualified as an "insured" for purposes of a contract of insurance, the Policy, with Defendant.

71. The Policy included a provision for underinsured motorist bodily injury coverage, which provides that Defendant will pay for damages and bodily injuries sustained by Plaintiff if injured by a negligent uninsured or underinsured driver.

72. Racine was a negligent underinsured driver for purposes of UIM Benefits owed to Plaintiff under the terms of the Policy.

73. Plaintiff has satisfied all conditions precedent under the Policy, and she is eligible to recover UIM Benefits under the Policy.

74. Defendant is liable for Plaintiff's injuries and damages, as described above, caused by the underinsured driver in accordance with the provisions of C.R.S. § 10-4-609.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

75. Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 74 of this Complaint, as if set forth *verbatim*.

76. The Policy was in full force and effect on the date and time that Plaintiff suffered injuries in the collision.

77. Defendant unreasonably failed to pay Plaintiff's claims that were made pursuant to the applicable Policy.

78. Defendant breached its contractual duty owed to Plaintiff.

79. Plaintiff is entitled to damages allowed by law for breach of contract against Defendant.

## THIRD CLAIM FOR RELIEF
### Unreasonable Delay/Denial of a Claim for Benefits
### Pursuant to C.R.S. §§ 10-3-1115-1116

80. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 79 of this Complaint as if set forth *verbatim*.

81. Defendant's delay and failure to settle Plaintiff's claim for benefits pursuant to the UIM Benefits coverage under the Policy was and is unreasonable in violation of C.R.S. §§ 10-3-1115 & 10-3-1116, as indicated above and in the following ways:

    a. Ignoring the fact that Plaintiff's sudden onset stutter did not exist prior to the collision;

    b. Discounting Plaintiff's medical bills without explanation;

c. Making Plaintiff ask at least three times for the basis of its denial of Plaintiff's request for the full UIM Benefits;

d. Taking nearly three months to provide any explanation of its settlement evaluation; and

e. Basing its denial of Plaintiff's request on the unsubstantiated claim that Plaintiff's stutter is not related to the collision.

82. Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to recover the covered benefit of $250,000.00, plus twice the covered benefit, as well as attorney fees and costs from Defendant for the unreasonable delay and denial of her claim for UIM Benefits.

**FOURTH CLAIM FOR RELIEF**
Bad Faith

83. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 82 of this Complaint as if set forth *verbatim*.

84. Defendant owed Plaintiff a duty of good faith and fair dealing.

85. Defendant's actions as set forth above were unreasonable and Defendant knew its actions were unreasonable and/or recklessly disregarded the fact that its actions were unreasonable.

86. Defendant breached its duty of good faith and fair dealing and its covenant to act in good faith with regard to Plaintiff, as described above.

87. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer economic and non-economic damages as described above, including but not limited to, having to be told by her own insurance company—a company that she trusted and relied upon in the event a catastrophic scenario arose from a car crash, resulting in permanent impairments—that her stutter was not caused by the very serious car crash. Instead of being able to focus on

recovering and providing quality instruction to her students, she has been forced to battle with her own insurance company for benefits that are clearly due to her.

**WHEREFORE,** the Plaintiff, Amy Domokos, prays for judgment against Defendant Shelter Mutual Insurance Company, in an amount to be determined by the trier of fact for her losses as set forth above and for costs, expert witness fees, filing fees, pre- and post-judgment interest, and such other further relief as the Court may deem appropriate, just, and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: June 21, 2018.                    Respectfully submitted,

                                          ZANER HARDEN LAW, LLP

                                        */S/ Sarah T. McEahern*
                                        Kurt Zaner, Esq. #40989
                                        Sarah T. McEahern, Esq. #48401
                                        1610 Wynkoop Street, Suite 120
                                        Denver, CO 80202
                                        Phone: (303) 563-5354
                                        Fax:    (303) 563-5351
                                        E-mail: kz@zanerhardenlaw.com
                                                          stm@zanerhardenlaw.com

**CERTIFICATE OF SERVICE**

I certify that on June 21, 2018, this **FIRST AMENDED CIVIL COMPLAINT AND JURY DEMAND** was served via the CM/ECF System to:

Sophia Tsai
Kelly Kafer
Morgan Rider Riter Tsai, P.C.
1512 Larimer St., Ste. 450
Denver, CO 80202

                                             */S/ Sarah T. McEahern*
                                             Sarah T. McEahern, Esq.